UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**RONALD E. RICHARDSON**,

               Plaintiff                         No. 3:10-cv-06365-ST

               v.                           **OPINION AND ORDER**

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

               Defendant.

STEWART, Magistrate Judge:

      Plaintiff, Ronald Richardson ("Richardson"), representing himself, seeks judicial review of

the Social Security Commissioner's final decision that he was overpaid $12,570.80 in Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").  Except as noted, this

1 - OPINION AND ORDER

court has jurisdiction under 42 USC § 405(g).  All parties have consented to entry of final judgment

by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 USC § 636(c)

(docket # 16).  For the following reasons, the Commissioner's decision is affirmed.

## TITLE II OVERPAYMENT ANALYSIS

The Act authorizes recovery of overpayments made to a beneficiary under disability

insurance programs.  42 USC § 404(a)(1); *Califano v. Yamasaki*, 442 US 682, 685 (1979).  However,

recovery is not authorized if the claimant is "without fault [and] if such adjustment or recovery

would defeat the purpose" of the Act.  42 USC § 404(b).  "Without fault" means that the claimant

"neither knew nor should have known that the overpayment or the information that the overpayment

was based upon was incorrect."  *Yamasaki*, 442 US at 685, citing 20 CFR § 404.507.

The regulations of the Social Security Administration ("Agency") provide that its

determination of fault will consider a claimant's age, intelligence, physical or mental limitations, and

linguistic limitations.  20 CFR § 404.507.  A claimant is at fault when the Agency's overpayment

results from:  (1) an incorrect statement made by the individual "which he knew or should have

known" to be incorrect; (2) failure to furnish material information; or (3) "acceptance of a payment

which the claimant either knew or could have been expected to know was incorrect."  20 CFR

§ 404.507(a)-(c).  Further, an individual will be at "fault" in accepting overpayment if the Agency

"has evidence in its possession which shows either a lack of good faith or failure to exercise a high

degree of care in determining whether circumstances which may cause deductions from his benefits

should be brought to the attention" of the Agency.  20 CFR § 404.511(a).

However, the Act commands that "there shall be no adjustment of payments to, or recovery

by the United States from, any person who is without fault if such adjustment or recovery would

defeat the purpose of this subchapter or would be against equity and good conscience." 42 USC § 404(b). In such circumstances, the Agency may "waive" recovery of the overpayment. 20 CFR § 404.512(a).

## BACKGROUND

This case has a lengthy and byzantine procedural history and background.

## I.   Initial Disability Determination

Richardson was born in 1950 (Tr. 447) and awarded disability benefits beginning on July 1, 1984. Tr. 533, 581. The file associated with this application has been lost, as described below. On September 22, 1989, an Administrative Law Judge ("ALJ") found that his eligibility for DIB continued. Tr. 533-35, 580-83. This decision states that Disability Determination Services ("DDS") obtained consulting evaluations regarding Richardson's physical and mental impairments, but that the evaluations did not complete a "medical assessment form" and that DDS did not obtain personality testing. Tr. 534. As a result, the ALJ found that the evidence could not indicate medical improvement of a foot fracture and unspecified mental condition and concluded that Richardson's disability continued. Tr. 534-35.

## II.   Overpayment of Benefits

On August 8, 1994, the Agency informed Richardson that, under its rules, he had a "trial work period" during certain months in 1986, 1988, 1994, and 1995.[1] Tr. 33. It also determined that Richardson continued to perform substantial gainful activity ("SGA")[2] after the trial work period

---

[1]  "[W]hen a recipient works for less than nine months, the Administration does not consider the trial work period as evidence that the individual is no longer disabled. 20 CFR § 404.1592; *see also Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F3d 920, 924-25 (9th Cir 2002).

[2]  SGA is "work activity that is both substantial and gainful." 20 CFR § 404.1572. SGA may include part-time work or work performed for less pay than a claimant previously received. 20 CFR § 404.1572(a).

3 - OPINION AND ORDER

closed and that his disability ceased "in April 1995, which is the first month of SGA after the [trial work period]." Tr. 34. However, the Agency found that his "extended period of eligibility is not over" and that his "work is continuing." *Id.*

Richardson reported to the Agency that he began working on December 9, 1996, and asked the Agency not to contact his employer because the employer did not know he was receiving disability benefits. Tr. 38.

On February 28, 1997, the Agency advised Richardson that it had received his January 1997 work report and was trying to locate his file. The Agency also warned Richardson that "if you have continued working, and have grossed over $500.00 a month in wages, you could be overpaid" in benefits. Tr. 37.

On July 2, 1997, the Agency issued a Waiver Determination regarding an overpayment of DIB in 1991 in the amount of $219.00. Tr. 39-40. In conjunction with this waiver, the Agency internally noted:

> The debtor exercised a high degree of care in reporting circumstances which may affect his entitlement. The debtor could not have known or been expected to know about the issue involved that caused the overpayment in order to keep it from occurring. Therefore, the debtor is found to be without fault in causing the overpayment.

Tr. 40.

Richardson completed an additional "Work History Report" on November 9, 1997. Tr. 44-46. He reported that he had been working as a ranch hand between January 1995 and February 1996 and from September 1, 1997, through the date of the report. Tr. 44.

On March 13, 1998, the Agency determined that Richardson's extended period of eligibility ("EPE") began in April 1995 and that his disability ceased due to SGA in April 1995, but that

disability benefits could be reinstated in the EPE for the period March 1996 through August 1997.

Tr. 12, 47.   By letter of that same date, it informed Richardson that his disability had ended because

of SGA and that he was not entitled to payments for July 1995 through February 1996 and September

1997 and later.[3]  Tr. 47-49.  Richardson called the Agency on March 19, 1998, and stated that he had

received the letter, did not dispute the facts, understood that benefits would terminate, and was

concerned regarding potential overpayment.  Tr. 50.  The Agency informed him of the overpayment

waiver provisions and instructed him to pursue this process if he received an overpayment.  *Id.*

Richardson called the Agency again on August 23, 1999, and stated that he "had put in for a hearing

years ago and never heard" from the Agency and is "still waiting."  Tr. 89.

On April 7, 2000, the Agency denied Richardson's request for an overpayment waiver and

determined that Richardson was overpaid $43,911.20 in DIB for April 1995 through February 1998

because "he continued to work and did not report return to work, causing untimely cessation of

benefits."  Tr. 56.  On April 10, 2000, the Agency informed Richardson of this debt and asked him

to pay it by check or money order within 60 days.  Tr. 59-60.  If he did not do so, the Agency advised

that it would collect the amount owed from his monthly payments.  *Id.*  It also informed Richardson

that it would not waive the overpayment of $43,911.20, explaining:  "You returned to work and did

not notify Social Security of the return to work.  You cannot therefore be found to be without fault

in causing the overpayment of the benefits."  Tr. 58-59.

On April 19, 2000, Richardson asked for a hearing on the matter stating:  "I informed the

Social Security office every time I attempted to return to work.  These were all failed work attempts

---

[3]   The copy of the letter in the Administrative Record is also stamped "March 14, 2007" and "North Bend, OR 938."
Tr. 48.

5 - OPINION AND ORDER

at return to work which did not exceed nine months." Tr. 61.  According to the Appeals Council, an ALJ dismissed this request on March 6, 2001.  Tr. 12.

On April 26, 2001, an Agency internal memorandum stated that Richardson was "unwilling/unable to repay [overpayment] of $31,340.40" and  recommended no further collection action.  Tr. 74.  Then on June 1, 2001, an identical Agency memorandum stated that the disputed amount was $1,198.00 and again recommended no further collection action.  Tr. 78.

Richardson submitted new applications for SSI and DIB on November 4, 2003, alleging disability since November 8, 1999.  Tr. 551-55.

On March 1, 2004, the Seattle Office of Hearings and Appeals sent the overpayment matter back to the Anchorage District Office for reconsideration.  Tr. 18.  On September 19, 2005, the Agency informed Richardson that, upon review, its overpayment determination was correct.  Tr. 87-88.  It explained:  "Based on your ability to perform substantial gainful activity your benefits were terminated effective April 1995.  Benefits paid to you April 1995 through February 1998  you [sic] were overpaid $43,911.20 in benefits."  Tr. 87.  The Agency again instructed Richardson  how to request a waiver.  Tr. 87-88.

Richardson called the Agency on November 30, 2005, complaining that he had never received this letter due to a change of address.  Tr. 90.  On December 7, 2005, he filed a new request for a hearing.  Tr. 93-94.

On March 28, 2006, the Agency informed Richardson that it would begin paying him benefits[4] in February 2006 of $1,274.00, but would withhold $1,219.00 each month for recovery of the

---

[4]  The Appeals Council states that the Agency determined that Richardson was entitled to DIB "beginning August 15, 2005, based on a subsequent application filed on September 16, 2005."  Tr. 12.

$43,911.20 overpayment.  Tr. 99.  As a result, Richardson's payments amounted to only $55.00 per month after April 2006.  *Id.*

Richardson spoke with Agency personnel on March 31, 2006, and was told that he had a pending overpayment hearing on the "fact and amount" of overpayment, but that no hearing date had been set because the Agency could not locate his file.  Tr. 102.  The Agency advised Richardson that he could "file for a lower witholding rate" or again request a waiver.  Tr. 102-03.  Richardson stated that he would request a waiver.  Tr. 103.

Internal Agency documents show that its office in North Bend, Oregon, could not locate Richardson's file and sought assistance in finding it from other field offices in Oregon and Alaska in April 2006.  Tr. 105-11.  At this time, U.S. Congressman Peter A. DeFazio's office also initiated an inquiry regarding Richardson's overpayment appeal and assisted in searching for his file.  Tr. 114.

Richardson filed another waiver request on April 5, 2006, again stating that he was not at fault because he had informed the Agency of his work attempts (but without indicating the dates of those communications) and because he could not afford to repay the overpayment.  Tr. 120-27.  By letter dated July 13, 2006, the Agency once again stated that it could not locate Richardson's initial disability file.  Tr. 166.  Further attempts to locate the file throughout the summer of 2006 were fruitless.  Tr. 179-81.

On August 24, 2006, ALJ John Madden issued a decision noting that "the original file was lost and there has been an attempt to reconstruct it, but the record still appears incomplete."  Tr. 186. Therefore, the record before him contained no evidence that an Agency decision upon reconsideration had been made.  Tr. 186-87.  He also found that the September 19, 2005 notice was "defective, because it does not address 'specific' reasons for the determination" but "merely restated that the prior

7 - OPINION AND ORDER

overpayment determination was correct, without further explanation." Tr. 187. Accordingly, he returned the case "to the effectuating component" for further action and concluded that Richardson did not have a right to a hearing before an ALJ. Tr. 187-88.

An internal Agency notation stated that Richardson's waiver was denied under administrative *res judicata* principles on October 4, 2006. Tr. 476. There is no indication that the Agency informed Richardson of this analysis.

Richardson submitted two statements to the Agency on March 13, 2007, reiterating his position regarding the $43,911.20 overpayment. Tr. 234-39. He wrote that he had not received a hearing before an ALJ as requested or an "open file review." Tr. 235.

On April 25, 2007, the Agency determined that Richardson's disability ceased on April 1, 1995, was reinstated on March 1, 1996, and was again terminated on April 1, 1998. Tr. 240. On May 25, 2007, the Agency revised this determination with the addendum: "Upon reconsideration, we have determined that you were due disability benefits for the months of April through June 2005 and for the months of March 1996 through August 1997. The overpayment on your record has been reduced accordingly." Tr. 242. The Agency did not indicate the amount of this reduction.

On the same day, the Agency noted that it had lost Richardson's file and found that Richardson was "now entitled to a new period of disability with an onset date of August 15, 2005, and a current entitlement date of February 2006." Tr. 243. It further explained:

> The beginning date of the EPE is April 1995. The determination from July 1991 was "reopened and revised" by the later determination made on March 20, 1998. The 3/20/98 determination was an "error on the face of the evidence[."] However, it is barred to correction under administrative finality. The "time period" for counting the four year rule under admin[istrative] fin[ality] begins with the initial determination date of July 1991. Therefore, the revised determination

>made on March 20, 1998, although erroneous, was barred to correction
>under administrative finality as soon as it was made.

Tr. 243 (internal citations omitted).

Crucially, this reinstatement of benefits had the effect of reducing Richardson's overpayment to $13,955.20. Tr. 245. The Agency informed Richardson of this change in a Notice of Reconsideration dated June 4, 2007. Tr. 248-50, 520-22.

On June 9, 2007, the Agency informed Richardson that, following an inquiry from Congressman DeFazio, it determined, as indicated above, he was due DIB for the months of April through June 1995 and March 1996 through August 1997. Tr. 313-14. Thus, Richardson's overpayment was reduced to $13,955.20. *Id.*

Richardson called the Agency on June 22, 2007, inquiring about the status of his waiver. Tr. 476. On September 18, 2007, the Agency informed Richardson that it had received his request to review its decision. Tr. 405. It also stated that he presently owed $14,525.30 and that it would not deduct the overpayment from his monthly benefit payments until it responded to his request for review. *Id.*

ALJ Jean Kingery held a hearing on the matter on January 16, 2008. Tr. 611-65. On June 27, 2008, the ALJ issued her decision finding that Richard owed an overpayment of $13,570.80 through February 1998 and an overpayment of $13,726.80 (adding a late $156.00 overpayment) through December 1998, as well as December 1999. Tr. 18-24. Richardson requested review of the ALJ's decision and submitted additional materials. Tr. 11, 455-56, 484.

On May 27, 2010, the Appeals Council notified Richardson that it was reviewing the matter because the ALJ's decision was not supported by substantial evidence. Tr. 480-83. On June 29, 2010, it denied Richardson's request for an appearance before the Appeals Council (Tr. 565) and also

9 - OPINION AND ORDER

stated "that the Notice of Appeals Council Action dated May 27, 2010 incorrectly referenced a $4,255.00 overpayment for your daughter, Kristina L. Richardson" and instructed him to disregard the statement.  Tr. 564.

## THE COMMISSIONER'S FINAL DECISION

On September 24, 2010, the Appeals Council issued a decision and order which modified the ALJ's decision.  Tr. 11-14.  A decision by the Appeals Council modifying an ALJ's decision represents the final decision of the Commissioner.  20 CFR §§ 404.981, 422.210; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 n1 (9th Cir 2004).

The Appeals Council first declined to address the issue of waiver because "the evidence does not show that [Richardson] was not overpaid or that the issue of waiver of recovery was properly before the Administrative Law Judge in accordance with 20 CFR § 404.930.  Therefore, [Richardson] will have to contact the local Social Security Office to pursue this matter."  Tr. 12.  Accordingly, the Appeals Council limited its decision to "whether there has been an incorrect payment(s) due to cessation of benefits because of substantial gainful activity and, if so, in what amount."  Tr. 11.

The decision subsequently reiterated the administrative history described above.  Tr. 11-13.  Relying upon a chart showing Richardson's overpayment in five distinct periods, the Appeals Council concluded that the overpayment amount should be $12,570.80.  Tr. 13-14.  In summary, the Appeals Council found that:

> 1.  [The Agency] overpaid [Richardson] $12,570.80 in disability insurance benefits for the period July 1995 through February 1998;
> 2.  The overpayment occurred because [Richardson] performed substantial gainful activity during his extended period of eligibility and after ended; and
> 3.  The issue of waiver of recovery was not properly before the [ALJ] in accordance with 20 CFR [§] 404.930.

Tr. 14.

Accordingly, the Appeals Council issued a decision finding that Richardson was overpaid $12,570.80 for the period between July 1995 through February 1998. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Bray v. Comm'r of the Soc. Sec. Admin.*, 554 F3d 1219, 1222 (9th Cir 2009). This standard applies to disability overpayment cases. *McCarthy v. Apfel*, 221 F3d 1119, 1125 (9th Cir 2000), *cert denied* 532 US 923 (2001).

"Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray*, 554 F3d at 1222, quoting *Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id,* citing *Robbins v. Social Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Burch v. Barnhart*, 400 F3d 676, 679 (9th Cir 2005). However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F3d at 1225-26, citing *SEC v. Chenery Corp.*, 332 US 194, 196 (1947); *see also Connett v. Barnhart*, 340 F3d 871, 874 (9th Cir 2003) (citing same).

///

## DISCUSSION

Richardson asserts that the Appeals Council should have (1) found that he was not overpaid and (2) granted a waiver for any alleged overpayment of benefits. Richardson also "appeals the way this case has been handled since 2000." The Commissioner responds that the Appeals Council correctly found that Richardson was overpaid $12,570.80, that the issue of waiver is not properly before this court, and that judicial review does not apply to the Agency's conduct.

## I.    Overpayment

Normally a claimant does not contest the fact of the overpayment, but only the Commissioner's determination that he was not "without fault" for receiving the overpayment. Here, however, Richardson disputes that he was in fact overpaid $12,570.80.

When a claimant challenges the Agency's determination of the amount he was overpaid, "the Commissioner must present reliable evidence of the particular overpayments." *McCarthy*, 221 F3d 1126. The "production of an initial determination letter is not enough," and the Agency bears the burden of establishing substantial evidence of overpayment. *Id*. The best evidence is cancelled checks, but other evidence may include a claimant's subpoenaed bank records or his "own prior admissions." *Id.*

In support of the fact of the overpayment, the Agency points to its own notice of overpayment to Richardson. Tr. 406-08. By itself, this is clearly insufficient evidence. However, the Agency also points to its internal memoranda regarding the overpayment (Tr. 242-43) and record of payments made to Richardson. Tr. 266-93, 338-41. This evidence shows monies paid to Richardson during the months indicated above (Tr. 242), the Agency's analysis in determining the dates he stopped working and when benefits were terminated (Tr. 243), internal Agency payment records (Tr. 266-93),

and an Agency spreadsheet apparently compiled for Richardson. Tr. 335-46. Thus, the record supports the Agency's position that it has overpaid the disputed monies to Richardson.

Richardson acknowledges that he received DIB payments while he was employed, but argues that his family helped him perform his job duties. He testified at his January 16, 2008 hearing that his family "helped with everything" in performing his work. Tr. 626-27. However, in response to questioning from the ALJ, Richardson stated that he received paychecks for the work activity and reported the earnings as his own to the IRS. Tr. 627. Neither Richardson nor his wife reported the earnings as his wife's. *Id.*

Work performed with special supervision or assistance may, in some circumstances, not be equal to SGA under the Commissioner's regulations. 20 CFR § 404.1573. However, Richardson does not appear to make this argument. Instead, he asserts that receiving work assistance somehow negated the effect of receiving and cashing the Agency's checks. That assertion is simply not based upon any applicable legal standard.

The Agency may find that a claimant is "at fault" for receiving an overpayment of benefits if "he either knew or could have been expected to know [the overpayment] was incorrect," 20 CFR § 404.507(a)-(c), and the Agency "has evidence in its possession which shows either a lack of good faith or failure to exercise a high degree of care in determining whether circumstances which may cause deductions from his benefits should be brought to the attention" of the Agency. 20 CFR § 404.511(a). Although Richardson notified the Agency that he was working, he also continued to cash the Agency's checks despite receiving notice that receipt of payments while working contravened the Agency's rules. Tr. 37. Therefore, the Agency's determination that he was at "fault" in accepting these payments was based upon substantial evidence.

In summary, the record indicates that Richardson performed substantial gainful activity, was found not disabled during the relevant periods, and continued to receive the disputed overpayments during these times.  Thus, the Agency's finding that Richardson was overpaid must be affirmed.

## II.  **Waiver**

Richardson argues that the Agency granted him an "informal waiver" of the overpayment in 1998.[5]  The disputed amount at that time was $43,911.20.  Tr. 330.

As evidence of this waiver, Richardson points to a form showing that he applied for a waiver on April 19, 2006.[6]  Tr. 322.  This document contains a handwritten annotation reading "informal waiver by PSC."  *Id*.  However, it is dated eight years after Richardson claims to have received a waiver.

The record also contains an Agency notation that Richardson telephoned on March 19, 1998, regarding a "due process" letter.  Tr. 50.  The Agency advised Richardson that he could apply for a waiver and noted that it  "explained waiver provisions [and] that he should pursue that after he got an [overpayment] notice."  *Id*.  This evidence does not establish that Richardson actually received a waiver in 1998.

Further, the record shows that the Agency internally denied Richardson's waiver request on April 7, 2000, because Richardson "continued to work and did not report return to work, causing untimely cessation of benefits."  Tr. 330.  The Agency informed Richardson of this decision on

---

[5]  The Agency responds that Richardson's argument addresses a Recovery of Overpayments, Accounting, and Reporting ("ROAR") document.  Tr. 537-39.  This description corresponds to the form cited by Richardson.  Tr. 322.  However, the Agency's own citation does not correspond to the waiver issue raised by Richardson regarding the 1998 application for waiver.  Instead, it relates to an earlier July 2, 1997 determination that the 1991 overpayment of $219.00 should be waived.

[6]  The signature is first dated April 5, 2006, and then reads "with changes" and dated April 19, 2006.  Tr. 329.

April 10, 2000.  Tr. 332-34.  Thus, the record does not show that Richardson received any waiver following his 1998 application.

The Commissioner also asserts that the waiver issue was not before the ALJ and, therefore, is not subject to the final decision reviewed by this court.  The Commissioner relies on the Appeals Council's September 24, 2010 decision stating that the issue of waiver was not before the ALJ (Tr. 14) and the ALJ's June 27, 2008, decision stating that "the issue of waiver is under consideration at a lower review level."  Tr. 24.

This court has jurisdiction only to review the Agency's final decision.  42 USC § 405(g).  The Appeals Council clearly stated that it did not consider the waiver issue because it was not before the ALJ.  Tr. 14.  Accordingly, even if Richardson had any persuasive evidence the Agency waived the overpayment, this court has no jurisdiction to review it.

## III.    Other Claims

Finally, Richardson states that he is appealing the illegal, unethical, and immoral handling of this case since 2000.  The court certainly sympathizes with Richardson's frustration with the Agency's dilatory and oftentimes confusing conduct.  However, this court has no jurisdiction to review the character of the Agency's actions.  It only has authority to determine whether a final decision by the Agency is based upon substantial evidence.  42 USC § 405(g).[7]  Therefore, it regrets that it cannot address Richardson's claims regarding the Agency's behavior in handling his case.

///

---

[7]  This court does not have jurisdiction under the Administrative Procedure Act to review an agency's actions.  42 USC § 405(h); *Califano v. Sanders*, 430 US 99, 105-07 (1977).

15 - OPINION AND ORDER

**<u>ORDER</u>**

For these reasons, the Commissioner's final decision regarding the fact of Richardson's

overpayment of disability insurance benefits under Title II of the Social Security Act is AFFIRMED.

Dated this 6th day of January, 2012.

s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge
